```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CHERYL D. LOVE,                                  :        04 Civ. 2871 (SHS)
                                                 :
                    Plaintiff,                   :
                                                 :        OPINION AND ORDER
        -against-                                :
                                                 :
CITY OF NEW YORK DEPARTMENT OF                   :
CONSUMER AFFAIRS,                                :
                                                 :
                    Defendant.                   :
------------------------------------------------------------------x
```

SIDNEY H. STEIN, U.S. District Judge.

## I.     Introduction

Cheryl D. Love brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and alleges that her former employer, the Department of Consumer Affairs of the City of New York ("DCA"), discriminated against her (1) based on her gender, (2) based on her national origin and (3) in creating a hostile work environment. DCA has moved for summary judgment in its favor on all claims. As explained more fully below, that motion is granted because there is insufficient evidence in the record to support Love's claims of gender and national origin discrimination and because the conduct alleged is neither severe enough nor pervasive enough to constitute a hostile work environment.

## II.    Background

Love was hired by DCA on August 23, 1999 for the position of Computer Associate Level 1. (Def.'s Local Civil Rule 56.1 Statement of Undisputed Facts ("Def.'s

Rule 56.1 Statement") ¶ 1; Dep. of Cheryl Love dated Mar. 25, 2005 ("Love Dep.") at 17:9-11, Ex. A to Walters Decl. dated June 17, 2005 ("Walters Decl."); Personnel Action Implementation, Ex. B to Walters Decl.). Love was a probationary employee for a one-year period. (Def.'s Rule 56.1 Statement ¶ 3; Notice of Probationary Period dated Aug. 23, 1999, Ex. B to Walters Decl.). The probationary period could be extended for up to six additional months plus time to compensate for absences or sick leave. (Id.). When she was first hired, Love was notified that, pursuant to DCA's Personnel Rule 5.2, her employment could be terminated without cause at any time during any extension of her probation. (Id.; see 55 R.C.N.Y. § Appx. A Rule 5.2).

Love, an African American woman, was placed under the supervision of Everett Barrett, a Jamaican man and Director of Management Information Services at DCA. (Def.'s Rule 56.1 Statement ¶¶ 5-6; Love Dep. at 52:7-12). Both plaintiff and defendant agree that during the relevant period, the Management Information Services department employed approximately the same number of women as men and the employees came from a variety of ethnic and national backgrounds. (Def.'s Rule 56.1 Statement ¶ 7; Barrett Decl. dated June 17, 2005 ("Barrett Decl.") ¶¶ 22-23; Pl. Opposition to Summary Judgment ("Pl. Opp.") at 5-6).

During her first year of employment – from August 1999 to August 2000 – Love received overall ratings of "good" or "very good" in each of her periodic performance evaluations. (Exs. D, E, F, and G to Walters Decl.). Love's probationary period was extended, however, first to September 19, 2000 and then until December 19, 2000. (Exs. I and J to Walters Decl.). According to Barrett, the extensions were necessitated by

2

Love's absences and "unsatisfactory performance." (Barrett Decl. ¶¶ 13-18). Personnel records state that the extended probation was "necessary to effectively review [Love's] performance prior to her becoming a permanent civil servant." (Memorandum from Johnny Bon to Helene Gladstein dated Sept. 18, 2000, Ex. J to Walters Decl.).

On October 24, 2000, Love sent an email to Barrett acknowledging that her performance was "slipping," that "[m]y office behavior has been an embarrassment to me" and that "[w]hat I need to concentrate on I am not." (Ex. C to Walters Decl.). Love received a "conditional" rating on her next performance evaluation based on a "noticeable drop in performance," an "inability to concentrate" and a failure to "routinely verify that all submitted jobs [were] accounted for." (Ex. H to Walters Decl.). Love subsequently consented to her probationary period being extended an additional three months, until March 19, 2001. (Ex. L to Walters Decl.). DCA terminated her employment on January 19, 2001, while Love was still on probation. (Ex. N to Walters Decl.).

Approximately six weeks later – on March 2, 2001 – Love filed a complaint with the New York State Division of Human Rights ("SDHR") alleging that she had been unlawfully discriminated against due to her "National Origin and Sex." (Love Art. 15 complaint, Ex. O to Walters Decl.). Specifically, Love alleged that her supervisor at DCA, Everett Barrett, "would walk past me and touch my behind knowingly and then look back at me," and that a female co-worker, Harriet Boyce, would "hold my hand when she was showing me the work." (Id. ¶ 2). Love alleged that this behavior forced her to take time off from work, which in turn resulted in the repeated extensions of her

3

probation. (Id.) Love also alleged that her employment was terminated because she objected to the harassment and because of her national origin. (Id. ¶ 4).

After an investigation, the SDHR concluded that "there is no probable cause" to believe that DCA discriminated against Love. (Ex. P to Walters Decl. at 1). The investigation found that Love could recall only one incident of unwanted contact with Barrett, during the winter of 2000, and that Barrett's only other objectionable behavior, according to Love, was that he "tended to use the middle finger" when pointing something out on paper. (Id. at 1-2). Love also mentioned that her co-worker Boyce was a "touchy feely" person "towards her and people" and that Boyce would sometimes touch Love's hands when they worked together. (Id. at 2).

The SDHR concluded that (1) even if all of these allegations were true, they lacked the pervasiveness and severity to constitute a sexual harassment-based hostile work environment pursuant to New York law; and (2) no evidence suggested that Love experienced a tangible job detriment due to any sexual harassment. (Id.). The SDHR noted that Love did not report any of the incidents or behaviors to the DCA's Equal Employment Opportunity office during her employment, that she had no witnesses who would testify as to Barrett's unwanted behavior toward her and that even though Love sent multiple emails to co-workers and management describing several issues of a personal nature, including instances of domestic violence against her, she never mentioned any objections or concerns about behavior in the workplace. (Id. at 2-3).

The SDHR also concluded that Love's claim of national origin discrimination lacked merit, finding that Love was unable to articulate any concrete examples of

disparate treatment during her employment, that DCA had articulated legitimate, non-discriminatory business reasons for its treatment of Love's employment and that Love "could not prove" those reasons were pretextual. (Ex. P to Walters Decl. at 4).

On December 24, 2003, the Equal Employment Opportunity Commission ("EEOC") adopted the findings of the New York State Division of Human Rights, dismissed Love's Title VII charge against DCA and notified Love of her right to sue DCA pursuant to Title VII within 90 days of her receipt of the EEOC notice. (Ex. R to Walters Decl.).

Three months later – on March 24, 2004 – the pro se office of this Court received both a complaint and an amended complaint from Love alleging that DCA had violated Title VII of the Civil Rights Act of 1964. (Compl. at 1; Amended Compl. at 1). Love alleged that she was discriminated against based on her gender and national origin in DCA's termination of her employment, in its failure to promote her and in other unspecified acts. (Amended Compl. ¶¶ 4-7). In the part of the complaint form that asked when the alleged discriminatory acts occurred, plaintiff wrote "I cannot recall ? Winter 2000." (Amended Compl. ¶ 5). DCA filed an answer denying all of Love's allegations of discrimination. (Def. Answer at 1-3).

### III. Discussion

#### A. Standard for Summary Judgment

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct.

2548, 91 L. Ed. 2d 265 (1986); Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995); LaFond v. Gen. Physics Serv., Corp., 50 F.3d 165, 171 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004); see LaFond, 50 F.3d at 171. Moreover, because Love is proceeding pro se, this Court will hold her pleadings to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam). Love's papers have been read liberally and interpreted to "raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

Even a pro se litigant, however, "may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence" in support of her factual assertions opposing summary judgment. D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); see Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996); Stroud v. New York City, 374 F. Supp. 2d 341, 349 (S.D.N.Y. 2005). Specifically, to defeat the DCA's summary judgment motion, Love must show that "there is sufficient evidence favoring [her] for a jury to return a verdict for [her]." Golden Pacific Bancorp v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)) (internal quotation marks omitted).

Construed liberally, Love's complaint alleges three categories of violations of Title VII: (1) gender discrimination, (2) national origin discrimination and (3) hostile

work environment.[1]  As is set forth below, DCA's motion for summary judgment should be granted because no genuine issues of material fact have been raised with respect to any of the alleged violations.

**B. Gender Discrimination**

Love's papers set forth four grounds for a claim of gender discrimination: (1) Barrett, her supervisor, once "brushed his hand" against her "behind" and "did some type of grunt" while walking past her (Love Dep. at 63:5-64:17; Ex. P to Walters Decl. at 1-2); (2) Barrett would use his middle finger to point things out on paper (Ex. P to Walters Decl. at 2); (3) Boyce, her co-worker, touched Love's hands when they worked together (Love Dep. at 69:1-70:11; Ex. P to Walters Decl. at 2) and (4) Love's termination was in retaliation for her having objected to being sexually harassed (Love Art. 15 complaint, Ex. O to Walters Decl. ¶ 4).

The first ground, based on the alleged touching incident, cannot form the basis for a gender discrimination claim because such a claim was not timely raised.  Title VII requires that New York plaintiffs file charges of specific acts of discrimination within 300 days of the occurrence of the act or acts.  See 42 U.S.C. § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); Weeks v. New York State (Div. of Parole), 273 F.3d 76, 82 (2d Cir. 2001).  Love

---

[1] DCA asserts that all claims are time-barred, alleging that Love did not file her federal complaint within the requisite 90 days of receiving her right to sue letter from the EEOC.  (Def.'s Memorandum of Law in Support of Its Motion for Summary Judgment at 3).  The EEOC mailed the right to sue letter on December 24, 2003.  (Ex. R to Walters Decl.).  Because no evidence has been presented establishing the exact date Love received the letter, the law presumes that the letter was received three days after its mailing, i.e., that it was received on December 27, 2003.  See Sherlock v. Montefiore Medical Ctr., 84 F.3d 522, 525 (2d Cir. 1996), citing Baldwin County Welcome Center v. Brown, 466 U.S. 147, 148 n.1, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984) (per curiam).  The pro se office of this Court received Love's federal complaint 88 days later, on March 24, 2004 (see Compl. at 1), rendering it timely.

first raised her claims of discrimination on March 2, 2001, when she filed her complaint with the New York State Division of Human Rights. Therefore, any claims based on actions that took place before May 6, 2000 – 300 days prior to March 2, 2001 – are time-barred. Love alleges that the touching incident took place in either 1999 (Love Dep. at 63:5-12) or winter 2000 (Ex. P to Walters Decl. at 1; Amended Compl. ¶ 5). Both of these proffered dates would render the touching incident untimely as a basis for her discrimination claim.

Love does not provide dates for Barrett's alleged use of his middle finger and Boyce's alleged hand-touching. (See Love Dep. at 69:1-70:11; Ex. P to Walters Decl. at 1-2). Even if this conduct was ongoing and occurred within the 300-day limitations period, however, it does not constitute grounds for discrimination pursuant to Title VII because it does not amount to an "adverse employment action," which is a requisite element of a prima facie case of gender discrimination pursuant to Title VII. See Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000). An adverse employment action is a "materially adverse change in the terms and conditions of employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). To be "materially adverse," the change in conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. No evidence in the record demonstrates that the alleged conduct by Barrett and Boyce was anything more than an inconvenience for Love or that the conduct resulted in an alteration of Love's job responsibilities. Accordingly, this alleged conduct cannot form the basis of a gender discrimination claim pursuant to Title VII.

Love's final allegation of gender discrimination – unlawful retaliation – can survive summary judgment only if she sets forth a prima facie case that (1) she participated in a protected activity, (2) she was disadvantaged by an employment decision or action and (3) the adverse employment decision was causally connected to the protected activity. Richardson v. New York State Dep't of Corr. Servs., 180 F.3d 426, 443 (2d Cir. 1999); Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998). Once a plaintiff has established a prima facie case of retaliation, the defendant "has the burden of pointing to evidence that there was a legitimate, nonretaliatory reason for the complained of action." Richardson, 180 F.3d at 443; see also Cifra, 252 F.3d at 216; Quinn, 159 F.3d at 768. If the defendant meets this burden, the plaintiff "must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Cifra, 252 F.3d at 216; see also Richardson, 180 F.3d at 443; Quinn, 159 F.3d at 768.

Love's firing was an adverse employment decision, and had Love complained to DCA about being harassed on the job, her complaints would have constituted "protected activity." See Johnson v. Palma, 931 F.2d 203, 207 (2d Cir. 1991). However, the evidence shows that Love never complained of, or even notified anyone at DCA about, the alleged harassment until she filed her complaint with the SDHR, which occurred six weeks *after* she was fired. In fact, Love admitted in her deposition that she never told anyone at DCA about being harassed or discriminated against, even though she knew that DCA's Equal Employment Opportunity office was available to hear such complaints.

9

(Love Dep. at 63:13-64:15). Love alleges that she told Barrett that she objected to him using his middle finger when pointing things out on paper. (Ex. P to Walters Decl. at 2). But there is no evidence in the record that her objections to this behavior (which, she admits, no witness can verify ever occurred (id.)) had anything to do with her eventual firing. No reasonable jury, therefore, could find the requisite causal connection between Love's objecting to Barrett's behavior, or any other alleged harassment, and her eventual termination.

Moreover, even if Love had been able to establish such a connection, DCA has shown legitimate, nonretaliatory reasons for terminating Love's employment – namely, that the decline in Love's performance and her excessive absences were sufficient grounds for dismissal, especially considering that Love was on an extended probationary period during which employees can be fired without cause. Love has presented no evidence, direct or indirect, suggesting that these reasons were a mere pretext for impermissible retaliation, nor has an independent search of the record turned up any such evidence. On the contrary, DCA has thorough documentation detailing Love's absences and steep decline in performance ratings.

In her complaint to the New York State Division of Human Rights, Love claims that the harassment she suffered led to her absences and the decline in her performance. (Love Art. 15 complaint, Ex. O to Walters Decl. ¶ 2). However, not only does the record not provide any support for this proposition, but it is contradicted by Love's own words. For example, her October 24, 2000 email to Barrett cites her problems at home as the reason for her slip in performance and her "embarrass[ing]" behavior in the office; the

email does not mention any harassment by Barrett, Boyce or anyone else at DCA. (Ex. C to Walters Decl.). Love was given several opportunities to complain to DCA about possible harassment, including the two occasions on which she gave written consent to have her probation extended, yet not once did she argue that the extensions were unfair or stemmed from harassment in the workplace. (Exs. J, L to Walters Decl.; Love Dep. at 63:13-64:15). Love's allegation that harassment in the office led her to be absent and her performance to decline, which in turn led to her termination, is therefore strictly conclusory and lacks evidentiary support. Moreover, as explained below, the behavior by Barrett and Boyce, even if true, does not amount to a hostile environment actionable pursuant to Title VII. Love therefore cannot rely on the existence of an allegedly hostile environment to excuse the poor performance that led to her dismissal.

For all of these reasons, defendant's motion for summary judgment on the claim of gender discrimination should be granted.

### C.  National Origin Discrimination

Love also claims that DCA discriminated against her based on her national origin. Love alleges that DCA failed to promote her and fired her because she was African American.

To establish a prima facie case for denial of promotion pursuant to Title VII, a plaintiff must show that she (1) is a member of a protected class, (2) applied and was qualified for the position in question, (3) was rejected for the position in question, and (4) was denied the job under circumstances giving rise to an inference of discrimination. See Brown v. Coach Stores, Inc., 163 F.3d 706, 709-10 (2d Cir. 1998). Love fails to meet the

second and third elements because she never applied for a promotion at DCA and therefore was never rejected for any position. Love may be alleging that she would have applied for a promotion had she not been discriminated against, stating in her deposition that "if I had completed my probationary period, I would have been entitled to … take the test for the position as a computer specialist operations." (Love Dep. at 93:23-94:2). But no evidence in the record suggests that Love's probationary periods were extended because of her race. Rather, as noted above, DCA has an extensive paper trail detailing how Love's absences and decline in performance led to her probation being extended and her eventual termination. Love's failure to promote claim is therefore without merit.

Love's claim of wrongful termination is equally baseless. To establish a prima facie case of wrongful termination pursuant to Title VII, a plaintiff must show (1) that she was a member of a protected group, (2) that she was qualified for the position in question, (3) that she was discharged from that position and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination. See Windham v. Time Warner, Inc., 275 F.3d 179, 187 (2d Cir. 2001); Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000). The record contains no evidence supporting the allegation that Love's termination occurred under circumstances giving rise to an inference of discrimination. During Love's deposition, when asked why she believed that she was discriminated against based on her national origin, Love offered only that Barrett was Jamaican and had had difficulty with Love's predecessor at DCA, who, like Love, was African American. (Love Dep. at 52:13-53:22). This subjective assessment, based solely on uncorroborated "feelings and perceptions of being discriminated against," is insufficient to sustain a

claim of wrongful termination based on national origin. Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999) (internal citation and brackets omitted). Because the record does not contain any evidence, apart from plaintiff's unsupported conclusions, that supports an inference of discrimination as the reason for Love's dismissal from DCA, defendant's motion for summary judgment on this claim should be granted.

### D. Hostile Work Environment

To sustain a claim for hostile work environment based on gender pursuant to Title VII, "a plaintiff must produce evidence that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of the victim's employment." Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004) (internal brackets omitted) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)). The behavior that creates the hostile environment must be undertaken because of the plaintiff's gender, Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001), and if acts of co-workers, as opposed to supervisors, are at issue, a specific basis must exist "for imputing the conduct that created the hostile environment to the employer." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996)).

Courts use a "totality of the circumstances" approach for determining whether a plaintiff's work environment is sufficiently hostile to support a hostile work environment claim. Miller v. Edward Jones & Co., 355 F. Supp. 2d 629, 636-37 (D. Conn. 2005). Among the factors courts must consider are: "(1) the frequency of the conduct, (2) the

severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance." Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 319 (2d Cir. 1999). A plaintiff can establish a hostile work environment by showing "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (internal quotation marks and citations omitted).

Importantly, the conduct must not only be perceived as hostile or abusive by the plaintiff, but must also be "objectively" severe or pervasive, meaning that the alleged conduct "create[d] an environment that a reasonable person would find hostile or abusive." Brown, 257 F.3d at 252 (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir.2001)). The U.S. Court of Appeals for the Second Circuit has cautioned that "isolated remarks or occasional episodes of harassment will not merit relief under Title VII." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 768 (2d Cir. 1998) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1306 n.5 (2d Cir. 1995)).

Love's allegations concerning the conduct at DCA do not approach the requisite level of severity or pervasiveness to sustain a claim of hostile work environment. Love relies on three types of behavior: the touching incident with Barrett, Barrett's use of his middle finger when pointing things out on paper, and Love's co-worker Harriet Boyce touching Love's hands when they worked together. Love also sent a letter to the Court alleging that "two or three months" into her employment at DCA, a co-worker hit her in

the chest with the back of the co-worker's hand. (Pl.'s Letter dated May 1, 2005 ¶ 5). Love noted that she did not mention the incident to a supervisor. (Id.).

Even if each of Love's allegations – none of which has been corroborated and all of which have been denied by DCA – is true, and even if they can all be imputable to DCA, together they do not constitute the kind of threatening or humiliating environment that could objectively have altered the conditions of Love's employment, as is required for a Title VII claim. The alleged incident with Barrett and the chest-hitting incident were one-time occurrences that appeared to have no effect on Love's work environment – both were alleged to have occurred at the beginning of her employment, well before her performance began to decline. As such, these alleged acts are "sufficiently isolated and discrete that a trier of fact could not reasonably conclude that they pervaded [Love's] work environment." Quinn, 159 F.3d at 768. Although Barrett's alleged use of his middle finger and Boyce's alleged hand-touching are claimed to be ongoing behavior, they nonetheless do not constitute the kind of "pervasive atmosphere of intimidation, ridicule and insult" courts have considered to be an alteration of employment. See, e.g., Brennan, 192 F.3d at 319; see also Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (noting that Title VII was not intended to create a "general civility code"). Moreover, there is no evidence whatsoever in this record that suggests that Barrett or Boyce engaged in these behaviors because of Love's gender.

Accordingly, DCA's motion with respect to Love's hostile work environment claim should be granted.

## IV. Conclusion

DCA's summary judgment motion is granted with respect to each of Love's claims because Love has been unable to produce any non-conclusory evidence that she was discriminated against based on her gender or national origin, and her allegations of improper conduct at DCA are insufficient to sustain a claim of hostile work environment. The Clerk of Court is directed to enter judgment dismissing the complaint.

Dated: New York, New York
September 29, 2005

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.